UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **KEITH EDWARD GARDINER**, | **2:22-CV-12304-TGB-EAS** |
| Petitioner, | HON. TERRENCE G. BERG |
| vs. | **OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS (ECF NO. 1),** |
| **WARDEN BAUMAN**, | |
| Respondent. | **DENYING A CERTIFICATE OF APPEALABILITY, AND** |
| | **GRANTING PETITIONER LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL** |

This is a pro se habeas action brought by Petitioner Keith Edward Gardiner ("Gardiner"), a Michigan state prisoner seeking relief under 28 U.S.C. § 2254. Gardiner challenges his Macomb County jury convictions of three counts of first-degree criminal sexual conduct (CSC-I) on a victim thirteen-to-fifteen years of age and member of the same household, Mich. Comp. Laws § 750.520b(1)(b), and one count of CSC-I on a victim under thirteen years of age, Mich. Comp. Laws § 750.520b(2)(b). Gardiner seeks habeas review on these grounds: (1) his retrial violated the Double Jeopardy Clause, (2) he received ineffective assistance of trial and appellate counsel, (3) the trial judge violated his right to an impartial

jury, (4) the state court lacked jurisdiction, (5) law enforcement violated his Fourth Amendment rights, and (6) the prosecutor engaged in misconduct. For the reasons set forth, the Court **DENIES** the habeas petition and **DENIES** a certificate of appealability.  The Court **GRANTS** Gardiner leave to proceed *in forma pauperis* on appeal.

## I.    BACKGROUND

Gardiner was convicted based his repeated sexual assault of his stepdaughter. His first trial, in May 2017, ended in a mistrial when the prosecutor elicited irrelevant and inadmissible testimony. *People v. Gardiner*, No. 339631, 2019 WL 2235824, at *1 (Mich. Ct. App. May 23, 2019). At Gardiner's second trial, the victim testified that that Gardiner "sexually abused her over many years. She described the times, places, and manner of sexual assaults she suffered." *Id.*

A jury convicted Gardiner of three counts of CSC-I, involving a victim aged 13 to 15 and a member of the same household, and one count of CSC-I involving a victim under 13. The trial court sentenced him to four concurrent prison terms 25 to 50 years.

Gardiner filed a claim of appeal in the Michigan Court of Appeals. On May 23, 2019, the Michigan Court of Appeals affirmed his convictions. *Gardiner*, 2019 WL 2235824. Gardiner filed an application for leave to appeal in the Michigan Supreme Court, which was denied on the basis that the court "was not persuaded that the questions presented should be reviewed[.]" *People v. Gardiner*, 941 N.W.2d 617 (Mich. 2020).

2

On November 4, 2020, Gardiner filed a motion for relief from judgment in the state trial court, raising the following claims for relief:

I.  The trial court reversibly erred in allowing the prosecutor to amend the text of the indictment, after the defendant submitted a video that refuted the charges against him, provided an alibi, and proved actual innocence. The actual amendment of the text to the indictment, violated the defendant's Fifth, Sixth, and Fourteenth Amendment rights, as well as Mich. Const. 1963 art 1 §§ 17 and 20.

II.  The trial court reversibly erred in allowing the prosecutor to establish an offense different from, and in addition to, those in the indictment, after the defendant submitted a video that refuted all of the charges against him, provided an alibi, and proved actual innocence.

III.  The trial court reversibly erred in allowing the prosecutor to inject thousands of alleged assaults (not in the indictment) into trial.

IV.  The trial court reversibly erred in not remanding defendant's case back to the district court. The trial court wrongfully tried, convicted, and sentenced the defendant on charges he was never indicted on, in a court that did not have jurisdiction to do so.

V.  The defendant's right to be secure from unreasonable searches was violated when police conducted an illegal search into his home.

VI.  The defendant proved his actual innocence via submission of alibi video evidence.

VII.  Actual prejudice took place against this defendant in each of these issues.

3

VIII. The defendant was denied his United States and Michigan constitutional rights to effective counsel when his trial counsel was ineffective.

IX.  The defendant was denied his United States and Michigan constitutional right to effective counsel when his appellate counsel was ineffective.

X.  The trial court reversibly erred when it allowed the prosecutor to fraudulently deceive the court and jury.

XI.  The trial court reversibly erred when it allowed prosecutorial misconduct.

XII.  The trial court reversibly erred when it denied the defendant an impartial jury and a fair trial.

XIII. The trial court reversibly erred when it committed a sentencing error. A sentence is invalid when it is based upon inaccurate information.

ECF No. 12-21, PageID.2082–83.

On February 11, 2021, the trial court entered an opinion denying Gardiner's claims on the merits. *See* ECF No. 12-23. Gardiner then filed an application for leave to appeal in the Michigan Court of Appeals, which was denied on November 3, 2021, because Gardiner "failed to establish that the trial court erred in denying the motion for relief from judgment." ECF No. 12-28, PageID.2340. Gardiner filed an application for leave to appeal in the Michigan Supreme Court, which was denied because Gardiner "failed to meet the burden of establishing entitlement

to relief under MCR 6.508(D)." *People v. Gardiner*, 973 N.W.2d 146 (Mich. 2022).

On September 28, 2022, Gardiner filed his habeas petition in this Court, which raises the following claims for relief:

I.   Mr. Gardiner's retrial should have been barred by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution because, due to the bad faith and intentional misconduct by the prosecutor, the defense had no choice but to either continue a tainted trial or move for a mistrial.

II.  The Sixth Amendment to the United States Constitution guarantees the right to effective counsel. Mr. Gardiner was denied this right when his trial counsel was ineffective.

III. Mr. Gardiner was denied his right to a fair trial with an impartial jury, in violation of the Sixth Amendment to the United States Constitution, when the trial judge was simultaneously acting as an accuser and adjudicator during the reading of the charges, thus prejudicing Mr. Gardiner.

IV.  Mr. Gardiner's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution was violated when the circuit court lacked jurisdiction to try, convict, and sentence him.

V.   Mr. Gardiner's right to be free from illegal searches and seizures under the Fourth Amendment to the United States Constitution was violated when the police, without Mr. Gardiner's consent, allowed a third party, non-law enforcement, to eavesdrop upon his private, yet police monitored, phone call.

VI.   The prosecutor's numerous acts of misconduct violated Mr. Gardiner's rights to due process and a fair trial from the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

VII.  Mr. Gardiner was denied his Sixth Amendment right to effective counsel when his appellate counsel was ineffective.

ECF No. 1, PageID.53-54.

Respondent filed an answer to the Petition, contending that Gardiner's claims lack merit. ECF No. 11. Gardiner filed a reply. ECF NO. 13.

## II.   LEGAL STANDARD

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Therefore, to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

### III.   DISCUSSION

**A.  Double Jeopardy**

Gardiner first argues that his retrial violated his rights under the Double Jeopardy Clause. He maintains that the prosecutor intentionally provoked defense counsel into requesting a mistrial. The Michigan Court of Appeals rejected this claim because Gardiner consented to the mistrial and the mistrial was not caused by the prosecutor's intentional conduct. *Gardiner*, 2019 WL 2235824, at *2–4.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, *Currier v. Virginia*, 585 U.S. 493, 498 (2018), "protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense." *United States v. Dinitz*, 424 U.S. 600, 606 (1976). Once jeopardy attaches, a defendant may not be retried after a mistrial has been declared unless (1) there is a "manifest necessity" for a mistrial, or (2) the defendant either requests or consents to a mistrial. *Id.* at 606–07. Where a criminal defendant moves for, or agrees to, a mistrial, the "'manifest necessity' standard has no place in the application of the Double Jeopardy Clause." *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982). Instead, when a mistrial is declared at the defendant's request, reprosecution will be barred only if the prosecutor "intended to 'goad' the defendant into moving for a mistrial." *Id.* at 676. The intent standard "calls for the [trial] court to make a finding of fact." *Id.* at 675. The

8

prosecutor's intent is inferred "from objective facts and circumstances" of the trial. *Id.*

At the first trial, the prosecution asked the victim whether she was aware that Gardiner had reported to police that she had inappropriately touched her younger sister. The victim replied, "I'm aware." ECF No. 12-12, PageID.1237. Defense counsel objected to that testimony and, outside the presence of the jury, the parties argued the admissibility of the evidence. Defense counsel argued that the topic was irrelevant and improperly opened the door to evidence of the victim's prior sexual conduct—evidence ordinarily barred under the rape-shield statute. *Id.* at PageID.1238–39. The prosecutor argued the evidence demonstrated Gardiner's consciousness of guilt, asserting that Gardiner made the allegation only after being charged with the CSC-I offenses in an effort to undermine the victim's credibility. *Id.* at PageID.1239–40. Defense counsel moved for a mistrial. The prosecutor opposed the motion for mistrial, arguing that any impropriety from the single question and answer on the subject could be cured with a jury instruction. *Id.* at PageID.1243–44; ECF No. 12-13, PageID.1283. The trial court granted the motion for mistrial "because the evidence lacked relevance and even if relevant, the trial would become too complicated and confusing, thus warranting exclusion of the evidence under MRE 403." *Gardiner*, 2019 WL 2235824 at *3. The trial court also "specifically found that no

9

prosecutorial misconduct occurred because the prosecutor believed the evidence relevant and admissible." *Id.*

The Michigan Court of Appeals held that the mistrial did not bar the retrial:

> De novo review of the record establishes no objective facts or circumstances to support defendant's argument that the prosecutor intended to goad defense counsel into moving for a mistrial. Rather, the record supports the trial court's finding that the prosecutor acted in a good-faith effort to admit evidence believed relevant to show defendant's consciousness of guilt. A defendant's exculpatory statement shown to be false can serve as circumstantial evidence of guilt. *People v. Seals*, 285 Mich. App. 1, 5; 776 N.W.2d 314 (2009). Further, even if the prosecutor erred by not raising her theory of admissibility in a motion outside the presence of the jury before asking the question that sparked the mistrial motion, such error provides no basis to invoke double jeopardy protections.

***

> Defendant's arguments that the prosecutor intended to goad a mistrial are unavailing. First, defendant argues that the prosecutor knew that the evidence she sought to admit was inadmissible because the prosecution had objected to a similar question at the preliminary examination, which had been sustained. But the prosecutor did not seek to show other sexual conduct of the complainant prohibited by MCL 750.520j. Rather, the record reflects that the prosecutor sought to show that defendant made a false report days after his arrest on the charged offenses. The prosecutor explained to the trial court that the prosecution relied on case law to support the theory that defendant's report to the police, if shown to be false, could show consciousness of guilt. The

10

evidence in this case does not establish that the prosecutor intended to goad defendant to move for a mistrial. Therefore, defendant's obtaining a mistrial in this case served as a waiver of the protection under the Double Jeopardy Clause. *See Kennedy*, 456 U.S. at 675–676; *Dawson*, 431 Mich. at 257.

We also find no merit to defendant's further argument that the prosecutor sought to goad the defense to move for a mistrial because the first trial was not going well. Defendant contends that the complainant's testimony at the first trial contained discrepancies. De novo review of the record, however, establishes that during defendant's first trial, the complainant testified to being abused by defendant from age 11 until leaving her home at age 18, and when questioned by the prosecutor, she explained the discrepancies between her trial testimony and earlier statements. The record reflects that she testified that there were so many instances of repeated sexual abuse that it made it hard for her to pinpoint specific dates, times, and details of the numerous incidents of sexual abuse over the years. The record also establishes that the prosecutor knew in advance that the complainant's testimony would differ from her previous statements and the prosecution took steps to deal with that in its examination of the complainant. The record does not support defendant's contention that the prosecutor intended to goad a defense motion for a mistrial. Accordingly, double jeopardy did not bar defendant's second trial.

*Gardiner*, 2019 WL 2235824, at *3–4.

The Michigan Court of Appeals' decision reasonably applied governing federal constitutional law and plainly is supported by the record. Although Gardiner contends that the prosecutor's question constituted improper goading, the record does not support his position and the Court is not persuaded. The state trial court believed that the prosecutor did not intend to provoke a mistrial. This factual finding is

11

presumed correct and has not been rebutted with clear and convincing evidence. *Wooten v. Warren*, 814 F. App'x 50, 58 (6th Cir. 2020) (applying AEDPA's presumption of correctness to state court finding that the prosecutor did not intend to provoke a mistrial). The state court of appeals' conclusion about the prosecutor's intent is further reinforced by the prosecutor's opposition to declaring a mistrial. *See id.* at 59. Further, the motion for mistrial was predicated on a single question, not a litany of improper questions. *See id.* Gardiner has not established that the Michigan Court of Appeals' ruling was contrary to or an unreasonable application of clearly established Federal law.

### B.  Ineffective Assistance of Trial Counsel

In his second claim, Gardiner raises several ineffective assistance of trial counsel claims. He claims counsel was ineffective for (1) failing to object to incomplete jury instructions, (2) failing to object to the prosecutor's closing argument, (3) failing to request in camera review of the victim's mental health records, (4) failing to adequately investigate his case, (5) failing to object to the trial court's reading of the charges, (6) failing to hire an expert witness to testify about the victim's mental health, (7) failing to object to the amended information, (8) failing to object to the victim's perjured testimony, and (9) failing to raise Fourth Amendment challenges. The Court will separately address Gardiner's seventh, eighth, and ninth ineffective assistance claims in the sections concerning each of the respective underlying claims *infra*.

On habeas corpus review, to prevail on an ineffective assistance of counsel claim, a petitioner must show that the state court's denial of his claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: a habeas petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *See id*. at 687. Gardiner must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and he must overcome the presumption that "the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quotation omitted).

The standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential … and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

## 1. Jury Instructions

Gardiner argues that defense counsel was ineffective for failing to object to the trial court's instructions regarding use of the victim's alleged prior inconsistent statements for credibility only. The Michigan Court of Appeals rejected this claim on direct review, stating:

> In this case, defense counsel impeached the complainant with alleged prior inconsistent statements to the police and alleged inconsistent previous sworn testimony. The trial court instructed the jury using M Crim JI 4.5(1) that the complainant's prior inconsistent statements, could only be used in "deciding whether the witness testified truthfully in court." Defense counsel expressed satisfaction with the trial court's instructions. Defendant argues now that the trial court should have instructed the jury with M Crim JI 4.5(2) to differentiate between out-of-court statements and previous sworn testimony subject to cross-examination which could have been considered as substantive evidence. Alternatively, defendant argues that defense counsel provided ineffective assistance by failing to request an M Crim JI 4.5(2) instruction.
>
> Because defense counsel expressed satisfaction with the trial court's instructions to the jury, defendant waived any error regarding the trial court's failure to read M Crim JI 4.5(2). *Kowalski*, 489 Mich. at 503; see also *People v. Carter*, 462 Mich. 206, 215; 612 N.W.2d 144 (2000). Defendant fails to present any specific argument on how the jury's consideration of the complainant's alleged inconsistent testimony as substantive evidence would have resulted in a different outcome. The record reflects that defense counsel argued to the jury that it could consider the complainant's prior inconsistent statements and sworn testimony for purpose of determining her credibility. Defendant only posits that an M Crim JI 4.5(2) instruction would have made it more likely that

14

the jury would not have believed the complainant's trial
testimony. The record, however, reflects that the instructions
as a whole, even if imperfect, fairly presented the issues to be
tried and sufficiently protected defendant's rights. Defendant
was not deprived of a defense or prejudiced by the absence of
the jury instruction. Even if we were to agree that the trial
court committed plain error by not so instructing the jury,
defendant has failed to establish that the claimed plain error
resulted in the conviction of an actually innocent defendant or
seriously affected the fairness, integrity or public reputation
of the judicial proceedings. Therefore, defendant's
instructional error claim fails.

Because defendant cannot establish plain error affecting
substantial rights respecting the instructions the trial court
gave the jury since he has failed and cannot prove prejudice,
even if he could establish that defense counsel's conduct fell
below an objective standard of reasonableness, he cannot
establish the prejudice prong of his ineffective assistance of
counsel claim. Therefore, defendant's ineffective assistance
claim in this regard also fails.

*Gardiner*, 2019 WL 2235824, at *5.

The state court's decision was neither contrary to Supreme Court

precedent nor an unreasonable application of federal law or the facts.

Gardiner fails to establish that defense counsel erred or that he was

prejudiced by counsel's conduct. First, counsel may have reasonably

decided not to object to the trial court's instructions in light of his closing

argument to the jury that the victim's prior inconsistent statements

should be considered for the purpose of determining her credibility. ECF

No. 12-18, PageID.1986–2002. Counsel may have reasonably believed

that the jury would have been inclined to acquit Gardiner if it considered

15

the prior inconsistent statements for credibility purposes, rather than substantively. Second, because the Michigan Court of Appeals decided that the underlying instructional error claim lacks merit, Gardiner cannot establish that defense counsel erred or that he was prejudiced by counsel's conduct. Trial counsel cannot be deemed ineffective for failing to make a futile or meritless objection or argument. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010). For these reasons, Gardiner fails to show that defense counsel was ineffective. Habeas relief is not warranted on this claim.

### 2.  Prosecutor's Closing Argument

Gardiner argues that defense counsel was ineffective for failing to object to two improper arguments during the prosecutor's closing argument. He claims the prosecutor improperly commented on the credibility of defense witness Rochelle Gardiner, Gardiner's wife and the victim's mother, and on the reasons for the victim's delay in reporting the abuse.

### a. Witness Rochelle Gardiner

First, the prosecutor told the jury that Rochelle Gardiner was able to tailor her testimony to counter the victim's account despite the trial court's sequestration order. The prosecutor asserted that, because Rochelle lived with Gardiner from the time of his arrest through trial, there was "no doubt" the two had discussed the victim's testimony "so by

16

the time mom got here today to testify, she had it down." *Gardiner*, 2019 WL 2235824 at *6. Gardiner maintains that this argument improperly injected the prosecutor's personal opinion.

The Michigan Court of Appeals held that the prosecutor's argument was not improper because she "asked the jury to draw inferences from defendant's wife's testimony and determine for themselves if the evidence indicated fabrication." *Gardiner*, 2019 WL 2235824 at *6. The Court of Appeals also held that defense counsel was not ineffective for failing to object to a proper argument, and, alternatively, that even if counsel should have objected, Gardiner was not prejudiced by the error. *Id.* at *7.

Gardiner does not show that it was unreasonable for the Michigan Court of Appeals to conclude that the prosecutor's remarks properly asked the jury to draw reasonable inferences from the testimony. He therefore cannot show that defense counsel was ineffective for failing to object. And any error was cured by the trial court's instruction that "[t]he lawyers' statements and arguments are not evidence. ... You should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge." ECF No. 12-18, PageID.2008. "A jury is presumed to follow [a trial court's] instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Given that the prosecutor's argument was not improper, Gardiner cannot show that counsel was ineffective for failing to object.

### b. Victim's Delay in Reporting Abuse

Gardiner also claims that the prosecutor improperly argued that the victim's delayed reporting was consistent with the prosecutor's experience in other sexual assault cases. The Michigan Court of Appeals agreed that this argument was improper but found the error harmless. *Gardiner*, 2019 WL 2235824 at *7. The court explained:

> [T]he record reflects that the prosecutor improperly argued that the complainant's delay in reporting the abuse was consistent with delayed reports the prosecutor experienced in other cases. However, even though such remarks constitute error, we are not convinced that the error affected defendant's substantial rights. The record reflects that the complainant's testimony established several reasons explaining her delay in coming forward and disclosing the sexual abuse she suffered as a child for many years. The evidence indicated that the offenses were committed at times when no one else was present because the complainant's mother worked outside of the home and her sister was in bed. The evidence also established that the complainant experienced manipulation and control by defendant and her mother. The complainant testified that their conduct discouraged her disclosure and caused her to delay reporting the abuse.
>
> The record also reflects that the trial court instructed the jury to decide the case based only on properly admitted evidence and told them that attorney comments are not evidence. This Court has explained that "instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *Seals*, 285 Mich. App. at 22. Further, "jurors are presumed to follow their instructions." *Unger*, 278 Mich. App. at 235.

> The evidence at trial established defendant's guilt beyond a reasonable doubt. Defendant has not shown that the prosecutor's remarks, when viewed in the context of all of the evidence at trial, led to the conviction of an actually innocent defendant or seriously affected the fairness, integrity or public reputation of the judicial proceedings. Accordingly, defendant's prosecutorial misconduct claims fail.

*Gardiner*, 2019 WL 2235824, at *7.

The Michigan Court of Appeals denied Gardiner's related ineffective assistance of counsel claim because he failed to show a reasonable probability that the outcome of the trial would have been different had counsel objected. *Id.* Reasonable jurists could not disagree with the district court's rejection of this claim.

### 3. *In Camera* Review of Medical Records

Gardiner argues that that he was denied effective assistance of counsel because defense counsel failed to request *in camera* review of the victim's mental health records. The Michigan Court of Appeals denied this claim, stating:

> To obtain an in camera inspection of privileged records, a defendant must demonstrate a good-faith belief, grounded in articulable fact, that a reasonable probability exists that the records contain material information that is favorable to his defense. *People v. Stanaway*, 446 Mich. 643, 650, 696; 521 N.W.2d 557 (1994). A broad unsupported request for privileged records for possible impeachment material does not meet this standard. *Id.* at 680–682.
>
> Defendant concedes that he cannot establish the prejudice prong of his ineffective assistance claim in this regard because he does not know if any privileged counselling or psychological records pertaining to the complainant exist. Hence, defendant

19

has failed and cannot show that the failure to obtain and review records resulted in the inability to discover information that likely would have affected the outcome of the trial. Therefore, defendant has not established a factual predicate for his claim that defense counsel provided him ineffective assistance in this regard.

*Gardiner*, 2019 WL 2235824, at *7.

The state court's decision was neither contrary to, nor an unreasonable application of, Supreme Court precedent. Gardiner fails to establish a factual predicate for this claim as he has not provided any evidence that the victim engaged in counseling or that any psychological records exist for review. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Gardiner is not entitled to relief on this claim.

### 4.  Pretrial Investigation

Gardiner alleges that defense counsel was ineffective for failing to investigate and call certain witnesses. Specifically, he contends that on the night of the sexual assault, which the victim said occurred after they arrived home from a concert, Gardiner had actually engaged in an altercation with "a dozen young males" which lasted 20 to 30 minutes. ECF No. 1, PageID.95. Gardiner alleges that two of these witnesses could have verified his whereabouts on that night. He also claims that defense counsel failed to call numerous friends and family as witnesses. The state

trial court rejected all ineffective assistance of counsel claims raised on collateral review. ECF No. 12-23, PageID.2162–63.

The trial court's decision was not an unreasonable application of federal law. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning … guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). However, "[i]f counsel does not conduct a substantial investigation into each of several plausible lines of defense, assistance may nonetheless be effective." *Strickland*, 466 U.S. at 481. Moreover, "[d]ecisions as to what evidence to present and whether to call or question witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004).

Here, Gardiner fails to show counsel was ineffective. He did not provide the Court with any affidavits or witness statements establishing each witness's proposed testimony. When a habeas petitioner predicates an ineffective-assistance-of-counsel claim on a failure to call a witness, he must provide the content of the missing witness's potential testimony. *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). Without such a proffer,

21

a petitioner cannot establish "that his counsel performed deficiently or that he was actually prejudiced." *Id.* (citing *Stewart v. Wolfenbarger*, 468 F.3d 338, 353 (6th Cir. 2006)).

Moreover, to the extent Gardiner suggests that counsel was not prepared for trial and failed to defend against the prosecution's case-in-chief, the state-court record belies that assertion. Defense counsel thoroughly cross-examined all witnesses, presented impeachment evidence, raised numerous objections and arguments on Gardiner's behalf, and called Gardiner's wife to testify in his defense. The Court concludes that defense counsel clearly investigated his criminal case. For these reasons, Gardiner's claim does not meet the requirements of *Strickland.*

### 5. Expert Witness

Lastly, Gardiner argues that defense counsel was ineffective for failing to hire a psychology expert to testify about the victim's mental health. This is because the victim testified during the preliminary examination that she had contemplated suicide. ECF No. 12-2, PageID.562. While this claim was not directly addressed, the state trial court summarily rejected Gardiner's ineffective assistance of counsel claims raised on collateral review. ECF No. 12-23, PageID.2162–63. A summary order is presumed to be an adjudication on the merits to which AEDPA deference applies. *See Harrington*, 562 U.S. at 99–100. Gardiner offers no basis for rebutting that presumption and the Court finds none.

The Court applies AEDPA's deferential standard of review to the state court's decision.

Gardiner has not shown that any mental health records exist or would have been discoverable. Nor has he shown how a psychology expert would have aided his defense. A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006). Gardiner fails to show that defense counsel's strategy fell below an objective standard of reasonableness, that expert testimony would have been admissible, or, even if admissible, that there was a reasonable likelihood it would have impacted trial's outcome.

## C. Preliminary Jury Instructions

In his third claim, Gardiner argues that he was denied the right to an impartial jury and a fair trial when the trial judge informed the jury pool of the charges against him as set forth in the information. Specifically, Gardiner challenges the court's use of the phrase "he did commit" before each count, asserting the trial court effectively opined on his guilt. On collateral review, the state trial court rejected this claim, concluding:

> [T]his Court was merely reading the information and informing the jury as to what crimes the Prosecution was alleging Defendant committed. Read in context, the reading of the information in this case was correct and adequately set forth the charges against Defendant. The Prosecutor was

alleging that Defendant "did commit" these crimes, and in context it is apparent that this Court was merely reading the allegations in the case and not instructing the jury that Defendant had, in fact, committed the crimes. Thus, this Court finds that the instruction fairly presented the charges against Defendant and sufficiently protected Defendant's rights.

ECF No. 12-23, PageID.2162.

The state trial court's decision was neither an unreasonable application of federal law nor contrary to clearly established Supreme Court precedent or the facts. Reading formal charges to the jury does not usurp the jury's fact-finding role. *Lay v. Skipper*, No. 20-1391, 2021 WL 1884060, at *5 (6th Cir. Jan. 28, 2021). Here, before reading the information, the trial court explained that he would read the charges brought against Gardiner and, immediately after reading the charges, further explained:

> The defendant has pled not guilty to these charges. You should clearly understand that the information I have just read is not evidence. An information is read in every criminal trial so that the defendant and the jury can hear the charges. You must not think it is evidence of his guilt or that he must be guilty because he has been charged.

> A person accused of a crime is presumed to be innocent. This means that you must start with the presumption that the defendant is innocent. This presumption continues throughout trial and entitles the defendant to a verdict of not guilty unless you are satisfied beyond a reasonable doubt that he is guilty.

24

ECF No. 12-14, PageID.1310.

Gardiner presents no evidence that the jury would have been confused by these instructions. Because the trial judge acted properly, Gardiner is not entitled to relief on this claim.

## D. Jurisdictional Error

In his fourth claim of error, Gardiner argues that the trial court lacked jurisdiction over the amended information because the case should have been remanded back to the state district court for a preliminary examination on the new charges. On collateral review, the trial court held that amendment of the information did not deprive the court of jurisdiction because the substance of the charges remained the same. ECF No. 12-23, PageID.2159–60.

Gardiner's argument that the state court lacked jurisdiction over his criminal case fails to state a claim on habeas review. The determination of whether a particular state court is vested with jurisdiction under state law and is the proper venue to hear a criminal case is a "function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976). Any purported violation of state law does not provide a basis for federal habeas relief. *See Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. Gardiner simply

25

offers no basis to challenge the trial court's jurisdiction. He is therefore not entitled to relief with respect to this claim.

## E.  Fourth Amendment

Gardiner contends that law enforcement violated his Fourth Amendment rights by eavesdropping on a phone call between him and the victim without a warrant. Gardiner argues that the evidence obtained from that search should have been suppressed. The state trial court rejected this claim in its opinion denying the motion for relief from judgment. ECF No. 12-23, PageID.2161–62.

Where a state "has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). "Michigan has a procedural mechanism which presents an adequate opportunity [for a criminal defendant] to raise … Fourth Amendment claims." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000).

Gardiner argues that he was not provided a full and fair opportunity to present his Fourth Amendment claim in state court. His argument, however, is based on his disagreement with the resolution of his claims. Allegations that a state court incorrectly decided Fourth Amendment claims are insufficient to overcome the *Stone v. Powell* bar. *See Good v. Berghuis,* 729 F.3d 636, 638 (6th Cir. 2013). Gardiner has not

shown that presentation of this claim was frustrated by a failure of this mechanism. The claim is therefore barred from federal habeas review.

The trial court also denied Gardiner's claim that defense counsel was ineffective for failing to file a motion to suppress. In fact, defense counsel filed a motion to suppress, which was denied. *See* ECF No. 12-3; ECF No. 12-23, PageID.2160. Gardiner fails to show that counsel's performance in this regard was ineffective or that the trial court's denial of this claim was contrary to, or an unreasonable application of *Strickland*.

## F.  Prosecutorial Misconduct

In his sixth claim, Gardiner argues that he was denied due process and a fair trial because the prosecutor committed numerous acts of misconduct. Specifically, he contends that the prosecutor wrongfully amended the information one week prior to the start of trial, unconstitutionally broadened the information by alleging that Gardiner committed thousands of assaults for which he was not formally charged, and allowed perjured testimony to go uncorrected.  Gardiner raised these claims in his motion for relief from judgment on collateral review. The trial court rejected the first two arguments on the merits, but did not address the perjured testimony claim.

For a petitioner to be entitled to habeas relief because of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to

27

make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis … is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11–12 (1985).

The *Darden* standard "is a very general one, leaving courts 'more leeway … in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (alteration in original)). "That leeway increases in assessing a state court's ruling under AEDPA," because the court "'cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites … other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable.'" *Stewart v. Trierweiler*, 867 F.3d 633, 638–39 (6th Cir. 2017) (quoting *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015)).

### 1. Amended Information

Gardiner fails to show that the prosecutor wrongfully amended the information without providing adequate notice of the charges against him, resulting in prejudice.

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation." U.S. Const., Amend. VI. The Sixth Circuit has explained this right, as applied to the States through the Fourteenth Amendment, as follows:

> The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense. *In re Ruffalo*, 390 U.S. 544 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977). This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial. *Combs v. Tennessee*, 530 F.2d [695, 698 (6th Cir. 1976)].

*Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984).

Where a defendant was provided adequate information of the charged offense to enable him to defend himself, "any other deficiencies in the indictment alleged by petitioner are solely matters of state law and so not cognizable in a federal habeas proceeding." *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986). In other words, if "sufficient notice of the charges is given in some … manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz*, 731 F.2d at 369.

29

The trial court, the last state court to issue a reasoned opinion regarding this claim, held that Gardiner received adequate notice of the charges against him. The information was only amended "to correct a variance between the information and proof regarding time, place, and the manner in which the offense was committed." ECF No. 12-24, PageID.2168. The trial court further ruled that Gardiner failed to make the requisite showing of prejudice because he had adequate time to prepare a defense prior to the second trial. *Id.* at PageID.2169.  The trial court's decision was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

The prosecutor originally filed a felony information on May 10, 2016, charging Gardiner with four counts of CSC-I (person under thirteen, defendant 17 years of age or older) with a 25-year mandatory minimum sentence. The information set forth the dates of the crimes as occurring between August 1, 2005 and November 4, 2006. ECF No. 12-32, PageID.2599. One week prior to the *first* trial, the prosecutor filed an amended information, changing the dates of the crimes to occurring between August 1, 2005 and November 4, 2011. ECF No. 12-31, PageID.2597–98. The amended information also charged Gardiner with three counts of CSC-I (relationship) and one count of CSC-I (person under 13). *Id*. On May 23, 2017, the start date of the *first* trial, the prosecutor informed the trial court that the amendment was warranted because the timeline of the crimes did not allow the prosecutor to charge CSC-I with

30

a mandatory 25-year sentence. ECF No. 12-10, PageID.648–49. Defense counsel agreed with the amendment. *Id.*

On May 26, 2017, the prosecution's case ended in a mistrial. The retrial began on June 6, 2017. Gardiner provides no facts establishing that he was prejudiced by the amendment of the information as the substance of the charges remained the same and he had adequate notice and opportunity to prepare a defense. Accordingly, he has not shown he was unfairly surprised by the amended information. He also cannot show that defense counsel was ineffective for failing to object to the properly amended information.

### 2. Other Acts Evidence

Next, Gardiner argues that the prosecutor unconstitutionally broadened the information by alleging that Gardiner engaged in other sexual assaults with which he was not formally charged. The trial court rejected this argument, ruling that:

> On review, this Court finds that the information was not broadened by the Prosecution at trial to include additional counts of CSC-I Degree, and Defendant was not unconstitutionally convicted of crimes that were never formally charged. The judgment of conviction and sentence only indicates that Defendant was convicted of the crimes charged in the information. Moreover, although Defendant was only charged with committing four assaults against [the victim], evidence of other crimes, wrongs, or acts may be admissible at trial for certain purposes, MRE 404(b)(1). Defendant does not contend that the evidence was inadmissible propensity evidence pursuant to MRE 404(b)(1).

31

> Thus, because the information was not unconstitutionally broadened and Defendant makes no arguments regarding any violations of the rules of evidence, Defendant has not established any violations of his substantial rights relating to the evidence presented.

ECF No. 12-24, PageID.2169.

The trial court's decision was not an unreasonable application of federal law or the facts. During trial, the victim testified that while she lived at home, "there were many sexual assaults that [she] had gone through." ECF No. 12-16, PageID.1676. When the prosecutor asked if the sexual contact between her and Gardiner happened one day or more, the victim testified "multiple days throughout a few years," as many as "five to six times a week." *Id.* at PageID.1677. Notably, defense counsel heavily cross-examined the victim on this testimony.

Gardiner contends that because he was only charged with four counts of CSC-I, the prosecutor wrongfully sought to convict him of crimes not charged. The Court disagrees. As discussed by the trial court, Gardiner was convicted only of the four counts of CSC-I identified in the amended information. *See* Judgment of Sentence, ECF No. 12-27, PageID.2223. He fails to show how the admission of the other sexual assaults otherwise misled the jury or prejudiced his trial. Moreover, Gardiner presents no argument that the prosecutor acted improperly by submitting other acts evidence under the Michigan Rules of Evidence. "[T]here is no clearly established Supreme Court rule that prohibits

32

states from admitting propensity evidence in the form of prior bad-acts evidence." *Meriweather v. Burton*, No. 15-1126, 2015 WL 7450068, at *2 (6th Cir. Nov. 24, 2015). For these reasons, Gardiner is not entitled to relief on this claim.

### 3. Perjured Testimony

Finally, Gardiner argus that the prosecutor acted improperly by eliciting perjured testimony from the victim and failing to correct that testimony. Although it appears that Gardiner raised this argument in his motion for relief from judgment, the trial court did not address it on the merits. Therefore, the Court will review the argument *de novo*. *Cone v. Bell*, 556 U.S. 449, 472 (2009).

Prosecutors "may not knowingly present false evidence" to a jury. *United States v. Fields*, 763 F.3d 443, 462 (6th Cir. 2014) (citing *Miller v. Pate*, 386 U.S. 1 (1967)). "[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). To prevail on a claim that the prosecutor relied on false testimony, a habeas petitioner must show that (1) the testimony was actually false, (2) the testimony was material, and (3) the prosecutor knew the testimony was false. *Amos v. Renico*, 683 F.3d 720, 728 (6th Cir.

2012); *Rosencrantz v. Lafler*, 568 F.3d 577, 583–84 (6th Cir. 2009); *Coe,* 161 F.3d at 343 (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)).

At trial, the victim testified that in August 2005, she attended a concert with her mother, sister, and Gardiner. ECF No. 12-16, PageID.1664. When they arrived home from the concert, her mother and Gardiner appeared intoxicated; and while they had some "down time" as a family, her mother and sister eventually went to bed, and she was left alone with Gardiner. *Id.* at PageID.1667. On cross-examination, defense counsel questioned the victim whether there was a difference between her testimony and what an eight-minute video showed after the concert, to which she stated, "No, sir." ECF No. 12-17, PageID.1764. Defense counsel played the video for the jury. Defense counsel then asked if the victim agreed that the video did not show Gardiner as intoxicated, which the victim stated, "I believe so." *Id.* at PageID.1770. Defense counsel also asked if the victim agreed that it did not show her mother or sister going to bed shortly after arriving home, which the victim also agreed. *Id.* at PageID.1772–72. Defense counsel continued to thoroughly compare inconsistencies in the victim's testimony with the video and the victim's prior preliminary examination testimony.

Based on the record before the Court, Gardiner has not shown that the victim's testimony was actually false. Mere inconsistencies in a witness's testimony do not establish that the testimony was false nor that

34

the prosecutor was aware that it was false when it was presented. *Coe*, 161 F.3d at 343. For these reasons, Gardiner fails to show that the victim committed perjury at his trial.  Because he has not shown that the prosecutor presented perjured testimony, he cannot show that counsel was ineffective for failing to object to the testimony. In fact, counsel cross-examined the victim extensively on her inconsistent testimony, allowing the jury to weigh its credibility.  Gardiner is not entitled to relief on this claim.

## G. Ineffective Assistance of Appellate Counsel

Lastly, Gardiner argues that appellate counsel was constitutionally ineffective for failing to raise the prosecutorial misconduct, jurisdictional, and Fourth Amendment claims on direct appeal. He first raised this claim in his motion for relief from judgment filed with the state trial court. The trial court held that appellate counsel was not ineffective for failing to raise meritless claims. ECF No. 12-23, PageID.2163.

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal by right. *See Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). Appellate "'[c]ounsel's performance is strongly presumed to be effective.'" *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004) (quoting *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)). A petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). "[A]ppellate counsel who files a merits brief need not (and

35

should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel." *Henness v. Bagley*, 644 F.3d 308, 317 (6th Cir. 2011).

As discussed *supra*, the claims appellate counsel omitted on direct appeal are meritless. Gardiner cannot establish that counsel was ineffective for failing to raise meritless claims. *Tackett,* 956 F.3d at 375. Therefore, relief is denied on this claim.

## IV.   CONCLUSION

For the above reasons, the Court **DENIES** Gardiner's petition for a writ of habeas corpus.

Reasonable jurists would not debate this Court's resolution of Gardiner's claims, so the Court **DENIES** a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 483–85 (2000).

36

The Court **GRANTS** Gardiner leave to proceed in forma pauperis on appeal because an appeal could be taken in good faith. *See* Fed. R. App. P. 24(a).

**SO ORDERED**.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: October 8, 2025